GEORGE M. HEATHCOTE, administrator, *vs.* CURTIS PUBLISHING COMPANY.

Suffolk.    January 14, 15, 1918. — March 2, 1918.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Guaranty.    Deceit.    Newspaper.*

A statement in an editorial published in a newspaper, that the owner of the paper for years has guaranteed every advertisement in its columns to be honest and trustworthy and that the "publishers guarantee the integrity of its advertising," indicates no more than that the advertisers in the paper can be depended upon as trustworthy and honest, and it does not guarantee the faithful performance of the contracts made by the advertisers nor agree to answer for their debt or default.

TORT OR CONTRACT, originally brought by Edna G. Heathcote of Newton and afterwards permitted to be prosecuted by George M. Heathcote, her husband, as the administrator of her estate, against the Curtis Publishing Company, a corporation organized under the laws of the Commonwealth of Pennsylvania and having a place of business in Boston, where it published and distributed a weekly newspaper called the Saturday Evening Post, and published therein an editorial article entitled "Concerning the Three of Us" and certain advertisements of the North American Construction Company, whereby the plaintiff's intestate was induced to order from that construction company "a Marsden (Aladdin) House," to her alleged great loss and damage, as described in the opinion.    Writ dated August 24, 1914.

In the Superior Court the case was tried before *Thayer,* J., who at the close of the plaintiff's evidence, which is described in the opinion, ordered a verdict for the defendant and by agreement of the parties reported the case for determination by this court.    If the ordering of the verdict was correct, judgment was

to be entered for the defendant on the verdict. If there was any evidence warranting the submission of the case to the jury a new trial was to be ordered.

*G. L. Ellsworth,* (*G. M. Heathcote* with him,) for the plaintiff.

*W. D. Turner,* for the defendant.

CARROLL, J. Since her marriage to the plaintiff in December, 1909, the plaintiff's intestate was a subscriber to the "Saturday Evening Post." In April, 1912, an editorial published by the defendant in that paper, entitled "Concerning the Three of Us," stated in substance that the defendant had for years guaranteed every advertisement in its columns to be honest and trustworthy and the "publishers guarantee the integrity of its advertising." This publication was read by the intestate, who was then thinking of building a house. Before February, 1913, she saw in the "Saturday Evening Post" an advertisement of the North American Construction Company concerning the "Aladdin house or Aladdin system" of partly made houses, and also an advertisement by the construction company entitled "How to Beat the Building Game." Mrs. Heathcote wrote to the construction company, which replied to her letter, and on May 29, 1913, ordered from it "a Marsden (Aladdin) House" for the sum of $1,464.90.

The parts of the house arrived at West Newton soon after July 29, 1913, and were taken to the land of the deceased. There was evidence that no plan was received indicating where the parts could be found, or instructions showing how the work was to be carried on; and that it required a skilled carpenter to construct the house. There was also evidence of deficiency in material; that some of the parts did not fit; that the building material was not as represented; and that in other respects the North American Construction Company had failed to carry out its contract. When the construction company learned that some of the flooring was missing, it authorized the plaintiff to purchase it at the expense of the company. In December, 1913, the plaintiff wrote to the company "stating the items that were short," and later, in settlement of the claim, received from it a check for $69 which he refused to accept.

The declaration is in four counts: the first alleges a breach of the contract of the defendant, in guaranteeing the "honesty,

integrity, [and] trustworthiness" of its advertisers, to the loss and damage of the plaintiff; the second and third are based upon the implied contract in holding out the defendant's advertisers as trustworthy, and its duty to use proper care to "investigate the truth of said recommendation;" the fourth sets out the defendant's fraud. At the close of the evidence the judge directed a verdict for the defendant and reported the case to this court.

While there was evidence that the North American Construction Company failed to perform its contract with the plaintiff's intestate, there was no evidence that this company was engaged in a fraudulent business, was financially irresponsible or was in the habit of intentionally deceiving people. The editorial was not strictly a guarantee to answer for the debt or default of another, and it contained no words indicating such an intention; it was in effect merely a recommendation of its advertisers. "The integrity of its advertising" and "guaranteed . . . to be honest and trustworthy," indicate no more than this: that its advertisers can be depended upon as reliable and honest. A statement that a manufacturer is trustworthy is an assurance that he is so reputed, — that nothing to the contrary is known; and, while an action may lie upon such a promise in case of fraud, it is not a statement which gives a right of action against the publisher if the party recommended does not do as he agrees under any particular contract. The defendant assured the readers of its publications that its advertisements were honest and trustworthy. It did not guarantee the faithful performance of contracts made by its advertisers nor agree to answer for their debt or default; nor did it promise that in supplying materials for the construction of the house the North American Construction Company would fully and exactly carry out the terms of agreement with the plaintiff's intestate. See *Eaton* v. *Mayo*, 118 Mass. 141.

We find nothing in the evidence to show a breach of the defendant's promise. On the contrary, the defendant, according to its practice, before receiving the advertisement, made a thorough investigation of the North American Construction Company, "the personnel of the company, their standing, . . . their business and financial ability and their general reputation;" and the result was entirely satisfactory. There is nothing to show that this investigation was not careful and complete, or that it revealed

or ought to have revealed any thing not in harmony with the statements of its editorial.

There is nothing in the answer of the defendant's president that shows a failure to examine thoroughly the affairs of the construction company. It appears from his answers that the North American Construction Company advertised in the "Saturday Evening Post" during the years 1910, 1911 and 1913, and that the defendant had no knowledge that this company was unreliable or ever had failed to fulfil its contracts. Two or three complaints about the construction company had been made to the defendant, but, with one exception, it did not appear what the reasons were, if any, for these complaints, or on what basis they were settled, if settlements were made. In one case the complaint was from a purchaser of a house, who said the siding and flooring were imperfect. He wrote to the North American Construction Company about it several times but no adjustment was made; he then wrote to the defendant, and although he did not make the purchase because of an advertisement "seen especially in the paper of the defendant," but after a visit to the construction company's factory, the construction company settled the loss and the matter was ended. These complaints did not show that the construction company was dishonest, unreliable, or lacking in integrity, and they are far from showing any neglect on the part of the defendant to investigate properly the North American Construction Company and the standing and reputation of its officers.

There is no evidence that the representations made by the defendant were false. It follows that the verdict was directed properly and judgment is to be entered for the defendant.

*So ordered.*